And the next matter on the argument calendar, Aragon-Aguilera. Good morning, Your Honor. Stella Light, Law Office of Indica. I have a law for the petitioner. Your Honor, this is a case in which we're contesting the admissibility of the record of deportable alien form I-213. It is for a position that it should have been admitted to start off with. It should have been excluded because it was obtained in violation of 8 CFR 287. Counsel, the main violation, if there was one, appears to be that the person who arrested the petitioner may have been the same person who questioned him. That's correct. And I'm wondering what possible prejudice there could be from having that person conduct the questioning versus the person standing next to him. I don't understand why there's prejudice. And doesn't there have to be prejudice for your client to receive a benefit in the form of exclusion? Yes, Your Honor. We believe prejudice was demonstrated in this case because he was the arresting officer. He was biased. Versus if he had another officer who were available at that time of the arrest, the other arresting officer could be a mutual. The question is, is the petitioner's own statements that, short of misconduct, I'm not sure what the bias of the questioner has to do with the content of the admissions that are made. If in his head he already thought the person was guilty, how that, if he acts properly, how that makes any difference to what the questioned person admits to. Well, Your Honor, there's a question of reliability of the I-213. The petitioner contends that he did not state those statements to the arresting officer. The I-213 also contained, I'm sorry, when the officer testified in the court proceeding, he also does not recall if he asked the petitioner whether he knew his sister and nephew was in the United States with their legal status. Therefore, it goes to the veracity of the I-213 because the material that was contained, it was contested by the petitioner. And so if the veracity and the contesting of its accuracy is separate from a bare violation of the regulation, there could be nothing wrong with it. It could be perfectly accurate, but taken by the arresting person. So in that situation, where's the prejudice? We believe that it wasn't properly prepared because there were other officers available. They could be mutual fact finders versus just believing what happened without giving the petitioner a chance to contest what was included in the I-213. Counsel, if we were to exclude the 213, what evidence is left in the record? The evidence left in the record, Your Honor, would be the petitioner's statement, in contrast to the admitted exhibits that were contradictory in nature. And also, if we were to call the witnesses of his sister and nephew, they would also ‑‑ we don't know what they would say. It could be in support of the petitioner's argument as well. We do know that he had illegals in his car when they were stopped. We know that. And we know that the immigration judge thought that his explanation was absolutely incredible and impossible. Is that enough? No, I don't believe that's enough, Your Honor, because the burden of proof is on the service to show that he knowingly, he had knowledge that his sister and nephew did not have papers and that he somehow assisted them in crossing the border. Is there evidence in the record that he didn't ask them whether they had papers? He did testify to that, Your Honor. The petitioner testified that he did not know. He actually assumed that they did have papers. And also, the officer who arrested the petitioner also stated in the record that he does not recall whether he asked the petitioner if he knew his sister and nephew did not have papers. Is there evidence that, well, I'll withdraw the question. Anything to keep the I-213 from being used to refresh recollection? I'm sorry, Your Honor? Is there anything that would have precluded the I-213 from being used to refresh Crawford's recollection? Yes, there would be. Whether it comes in or not. Yes, it would, because there are mistakes, there are alterations, and there's also omissions. And also the testimony. No, no, no, no. He just picks it up and reads it to himself, having said he doesn't recall precisely what was said. And he picks it up and he looks at it and says, oh, now I remember. Here's what he told me. There would be a concern with that, Your Honor, because in this case he specifically states that he remembers the petitioner. However, if he so specifically remembers what the petitioner did, it contradicts what the petitioner actually stated to him. I will have a problem with that as well, because that's a reliability issue. He's just remembering what he wrote on the I-213. In addition, Your Honor, on the issue of this goes to knowledge, because of the evidence that was submitted in terms of the time of the entry for the petitioner when his vehicle crossed through the border of Degate, it's contradictory versus in terms of what came out on the TechTube printout, which states that he crossed at 634. The officer's I-213 stating he crossed at 334. The I-213 assisters stating that they entered at 1 o'clock. It's our position that time is extremely relevant in this issue to show that there's no way that he could have assisted them in entering the United States, because from Degate to Neyland, when they were actually stopped, there's a calculation of 102 miles per hour, and our position is that it would defy logic that he would drive at such speed to draw attention to himself if he actually had illegal aliens, if he knew they were legal, in his car with him. Your Honor, there's no further questions. Okay, let's hear from Ms. Hauser. May it please the Court, I'm Susan Hauser, appearing to the Attorney General. First, I'd like to address the statement by the petitioner that Officer Crawford didn't remember whether he had asked the petitioner if he knew that his sister and her son were illegal aliens. The I-213, which Officer Crawford authenticated by his testimony in great detail at the hearing, states that the subject stated that he traveled to Tijuana, met his sister and her son, then drove them to Tecate, not sure about the pronunciation. Tecate. Tecate, where his sister and her son illegally entered the U.S. without inspection. The subject met them on the U.S. side of the border after their illegal entry and picked them up. And I submit it's not credible to believe that the petitioner would have taken his sister and her son to the border, dropped them off, then met them on the other side if he had thought that they had papers to legally enter the country. I'd also like to take just a moment to review the posture of this case because this is not a direct petition for review of a BIA decision. The petitioner waived direct review when he failed to appeal the BIA decision in his case. And instead, this is a petition for review of the BIA's decision denying reconsideration. And there's a different standard of review. It has to be shown that the BIA abused its discretion in denying the motion to reconsider. The petitioner seems to think that those two standards of review should be equated simply because they're saying that the BIA's decision was wrong on the merits. That argument could be made with any motion to reconsider, and it would completely negate the different standard of review for denial of reconsideration. Counsel, what's your view of the purpose of the regulation to have a different person do the questioning than the arresting officer and whether prejudice, in what way prejudice can flow from failure to follow that? Well, in the first place, there's a question here about when or even if there was an arrest, and the duty under the regulation doesn't attach until there's been an arrest. I understand you're not waiving any of those arguments, but if you would just address the question about the purpose of the regulation and how prejudice could flow from a failure to follow it. Well, frankly, I don't see how — I don't understand the purpose of the regulation, and I can't answer that because I haven't gone back and researched any statements that were made when the regulation was adopted. There must be some purpose for the regulation. One would think that there would be a purpose for the regulation, but I'm not aware of any that was stated when the regulation was adopted. Perhaps it might have more evidentiary value if there were to be an arrest, which, again, we don't see that there was in this case. It's the officer's burden to show if he's challenging the regulation that there wasn't, in fact, an arrest here. And it's also his burden because there's a presumption. Well, I understand all that, counsel, but I think we are puzzled by the requirements of the regulation and if it serves an important purpose. Well, I confess that in the facts of this case, I don't see how there could be any prejudice. You can't go a little broader and talk about policy? Excuse me? I want you to address the policy of the regulation. Well, in my research for the brief in this case, I wasn't able to locate any statement of the government policy, so I believe it would be impossible at this time to go back and define what that policy was in any great detail. Again, I would state my assumption is that this would help, that this would make the evidence more convincing, that if you have two different officers testifying to the same set of facts, the evidence is going to have more weight than if you just have one officer so testify. That would be my assumption, but I can't point to anything in the Federal Register or anywhere else. You're suggesting that there's no protection for the alien on account of the regulation? I would assume, again, that this isn't a regulation that would serve the interests of the government because it would provide the testimony of two officers instead of one. I don't see where there's any potential benefit to the alien by being, I suppose you could argue that maybe there's more of a chance that there would be a conflict in the two officers' testimony, but that hardly seems logical that that would have been the reason for adopting the regulation. Two record questions. One of them, at some point there was a suggestion that Young may also have been present? Correct. Where do I find that? There were several documents that the immigration judge didn't admit. It's not part of the record? Well, he admitted them, but he didn't consider, he just submitted them as, you know, for their weight, and then he didn't consider them in his decision. The G-166, I believe, is the name of the form, and that, I believe, is the one that indicated that Officer Young was present. But at any rate, the regulation more or less leaves it up to the discretion of the officers who are present to decide whether they have the facilities available to have another officer interview. Well, that was my second question. Is there any place in the record that one can look at to see whether, in fact, there were other people available or not? No. I would say there's nothing in the record to show what each officer was doing at 730, the time period, say, from 730 to 830, when these aliens were apprehended. We don't know how many other people came through the checkpoint at that time, what other ones were being arrested or whatever. Oh, we do know there were four officers there on duty. Correct. They could simply have swapped positions. Well, again, the regulation, the wording of the regulation grants a great deal of discretion to the officers. It just says, more or less, that if it's convenient and it isn't going to interfere with business, then it's really more aspirational than a requirement that the officers do this. And, again, this was a border patrol checkpoint that's set up on a very busy highway, and while it might sound like four officers could interview these three different people, there may have been 10 or 12 other groups of people who were waiting and processing at the same time, or one of the officers could have been on a dinner break during part or all of this time. We just don't know. And, again, it's the Petitioner's burden of proof here because there is the presumption of regularity for government officials. I have one other question. You're correct that this is asking for review of denial of a motion to reconsider, and that somewhat of a different standard applies to that. But how do we divorce that entirely from the merits? In other words, if the original decision was obviously wrong in some way, then doesn't that inform whether denial of the motion to reconsider was an abuse of discretion? And, conversely, if the decision made sense, then there would be no abuse of discretion. So how do we separate those considerations out, in your view? Well, first I would argue that they have to be separated because otherwise they would be different. I understand your argument, but how? I would say that it's the lens through which the BIA decision is viewed, that the mistake by the BIA would have to be particularly egregious because the BIA has broad discretion, as this Court held in Abudu v. Sioness, which is cited in our brief, I believe is the case, very broad discretion to deny motions to reconsideration because there are a huge number of them that are made to the Board. And it would simply overwhelm the Board. And also, as the Supreme Court has held, aliens have a great interest in simply prolonging proceedings for as long as they can and allows them to stay in the United States. And so, therefore, there are very good policy reasons for the higher standard of review for motions to reconsider and reopen. Well, I guess that doesn't give me very much practical advice, which is what I'm looking for is what our thought process is, whether we just look at the original merits as we normally would and then put this overlay on it, or exactly what mental process we are to go through in your view. Well, because the BIA has discretion to decide to reopen and reconsider, the BIA has a certain amount of ability to set standards for reopening and reconsideration. So, again, I would just say that in order to overcome that broad discretion, it would have to be a particularly egregious error. It couldn't be an error where there was a possibility that an alien might be able to show some additional evidence or might be able to make his burden of proof again on three men or maybe there were three or four officers there. That kind of thing just wouldn't rise to that level. What if the BIA had simply relied on the wrong statute and the wrong regulations? Would that be a basis for saying they abused their discretion in reopening? I think it would depend. If the BIA relied on the wrong statute, I would think that would be a pretty egregious error. In this case, there's no allegation that anything like that happened. This is essentially, this is a case where the INS stopped somebody. The paperwork was written up. The officer came into court and testified. They've made allegations of various minor procedural violations. Even their allegations are minor violations. It's difficult to see what prejudice there could have been here based on Kuchner's own admissions and based on his lack of credibility and the fact that he admitted that he had gone into Mexico, admitted he had been in touch with his sister, admitted he knew his sister lived in Mexico, was caught with her and her son in his car, admitted he knew that aliens crossed illegally at Ducati. It's difficult to see how there was any, even crediting his challenges, how there was any egregious violation here. If we were to say that the 213 should have been excluded, was there enough evidence to remove the alien? Absolutely, because Officer Crawford testified in great detail to every fact that was in the I-213. And we'd also argue very strongly that it would put a huge burden on the government to put a very high standard on these government documents to require officers to come in in every case in detail. In fact, this court has held in another case that it would put an unjustifiable burden on the government to have officers come in and testify in every one of these cases. And this is a case where even the allegation was that there were only two completely irrelevant mistakes that were made on the form. And all the other allegations were either red herrings or things like that. You've answered my question, and you're moving on. Okay. Thank you. Okay. Thank you. Counsel, we've lost time. I'll give you a couple of minutes more. Thank you, Your Honor. Your Honor, I do want to draw your attention to the regulation. The regulations were implemented to serve a purpose to benefit the alien. That was held in U.S. v. Medina, Gardero, Medina, I'm sorry. And the regulations were implemented by the agency. If we go by what the respondent states, that means that any Border Patrol agency, so long as it's based on the discretion of the arresting officer, whether they're busy or not, whether who's available or not, then they don't have to follow the regulation. That's not what the regulation is set for. It's set to implement the law and also to conform to, I'm sorry. Well, Young was present, right? Young was present. Young was present, Your Honor. However, he was not the one who interviewed the petitioner. Petitioners say that he never remembers, he does not recall ever talking to Officer Young. Officer Young prepared the document, the GI-166. However, even though he was admitted, subsequently the IEJ decided to exclude it and to give it away, I'm sorry, because Officer Young was not there to be cross-examined. However, the IEJ selectively admitted to evidence Exhibit 5 and 6, the I-213 for the sister and also for the nephew. Even though the officer prepared those documents, Officer Gardero was not either available to be cross-examined. With respect to availability of officers, there were four officers total. Besides the arresting officer, there were three other ones. Officer Young, we don't know what he was doing. He prepared the forms. However, petitioners say he never spoke to him. So the information on that form is suspect. With Officer Gardero, even though he prepared the form for the sister and also for the minor child, the child is five years old. He could not provide any testimony. Therefore, there were other officers available to obtain testimony from the petitioner. Thank you. Thank you. Thank you, counsel, for your arguments. The matter just argued will be submitted.
judges: B. Fletcher, Rymer, Graber